The first one is 19-50047, Mr. Melton. May it please the court, if acceptable to the court, I'm going to start off with what I believe to be the more unique issue in this case with respect to the arbitration of Dr. Sabatelli's breach of contract claim. Dr. Sabatelli's breach of contract claim is simple. We have alleged that they failed to give him the proper 90 days notice prior to terminating his contract. After we made the arbitration demand, defendant Scott & White moved in arbitration to have the breach of contract claim dismissed from arbitration. The arbitrator denied Scott & White's motion. After learning that the arbitrator was not going to accept Scott & White's arguments, Scott & White tried again with the district court in this case. This time it's successfully essentially obtaining what amounts to a permanent injunction on the arbitration. The first issue is who is supposed to decide this issue? Is it supposed to be something for the arbitrator to decide or something for the court? Nobody disputes that the breach of contract claim is subject to an arbitration agreement. Wouldn't the discrimination claim also be subject to the arbitration agreement? I mean, it says disputes arising out of this agreement. The agreement is why he's employed. I agree that it's possible that it is subject to the arbitration agreement, but it's also proper in federal court and the defendant in this case never moved to compel the age discrimination and disability discrimination claim into arbitration. But all the cases you rely on about splitting causes of action are cases where the cause of action that was split was non-arbitrable. So here, all of the claims, as far as I can tell, would have been arbitrable, could have gone to arbitration on all of them at the start. But having failed to do that, then we're no longer in this split world that these other cases were, are we? Well, I think it's possible that the discrimination claim could be arbitrable, but nobody ever moved to compel that it did, and therefore it was proper to file or to be in federal court. I mean, that's always true. Right. You don't have – if neither side asks for arbitration, the judge isn't going to sua sponte, send you to arbitration. But you also could have litigated the contract claim in the federal court under supplemental jurisdiction. Well, I don't think that the breach of contract claim would be proper in federal court. It's a state law breach of contract claim between nondiverse parties. Yeah, but it's a supplemental jurisdiction. The court could exercise supplemental jurisdiction, but given the agreement in the contract saying that it's proper, that it's subject to arbitration, I mean, it's clearly proper in arbitration. I mean, I grant you that it's an interesting question that we've – both sides have not been able to find a case directly on point. But the arbitration clause clearly covers a breach of contract claim, and we filed the arbitration demand, and the arbitrator ruled that there was no res judicata on the breach of contract claim with respect to the previously filed discrimination claim. So the U.S. Supreme Court in Howsam in 2002 stated that procedural issues such as this one and other conditions precedent are for the arbitrator to decide, not the court. I believe the 11th Circuit, 2nd Circuit, 1st Circuit, 3rd Circuit, 9th Circuit, and 7th Circuit have all decided that issues such as res judicata are for the arbitrator to decide. Now, Scott and White distinguish these cases by arguing that the court was deciding res judicata in this case with respect to its own particular judgment, distinguishing between deciding whether a federal judgment was subject to res judicata. This might be a good argument if the district court had actually resolved the breach of contract claim, if we had ever made a breach of contract claim in federal court, arguing supplemental jurisdiction. If the court had ruled on that, then yes, we couldn't then file an arbitration demand and then somehow argue that the arbitrator should decide res judicata. That would be something for the court. But in this particular case, the court never reached the merits of the breach of contract claim. The claim was never asserted in the federal lawsuit. And therefore, it's a procedural issue to be decided by the arbitrator. And in fact, the arbitrator did decide it. Claim splitting, as the cases I've cited say, is a natural consequence to the FAA. The Supreme Court in the Dean Witter v. Byrd case stated that the Arbitration Act requires district courts to compel arbitration of pending arbitrable claims when one of the parties filed a motion to compel, even where the result would be the result of inefficient maintenance of separate proceedings. But those are the cases I was talking about. Were any of those cases like this one where all the claims were arbitrable and some of the arbitrable claims had already been fully litigated in court? I agree, Your Honor. And that's why this is a unique case. And doesn't that make the difference? Because I understand the concept of splitting. If this arbitration clause had said claims of breach of contract can be arbitrable and said nothing about anything else, then you would have all the case law that you're talking about. Right. Different, because that's a split, because the arbitration clause is limited. But we have a broad arbitration clause, and everything's arbitrable. Then what makes sense in this claim splitting concept, particularly when you're the plaintiff and you chose the venue of the court originally? Well, I chose the venue for the discrimination claim because it's a proper venue for a federal court to decide. And I wasn't sure whether or not the arbitration agreement covered it or not. But if the defendant was going to compel arbitration, then we would then get to that issue and address it, and the court would make that decision. But the defendant's been consistent, not trying to get to arbitration, went ahead and litigated in federal court, and now saying you can't back into the arbitration after you pick the federal forum to litigate the related disputes. Now, you may argue they're not related. I understand that. But the defendant is saying they are related. The defendant isn't taking inconsistent positions on arbitration. You are, or your client is. Right. Well, I don't think they're really related, to get to what you were just saying. The issue in the discrimination claim is whether or not age or disability motivated the people involved in this case to terminate my client. The issue on the breach contract is simply, was there proper notice given under the contract? And what we're saying is that since the contract says you have to give 90 days written notice, they clearly didn't do that. Of course, they say that's because you resigned. You're a client resigned, not you. He was told he was going to be terminated if he didn't resign, so he did resign. There is some overlap, though, because aren't you arguing on the discrimination claim, one of your arguments for pretext is that they didn't follow the contractual procedure for termination. So how do you deal with that overlap? I mean the district court did have to get into the termination question, at least as part of pretext. Well, it's what the – the failure to follow the contract is an evidence of a discriminatory motive. It's not necessarily we're making that claim itself. As you know, Judge Justice, there's many ways to show pretext, and one of them is failure to follow. But we can have inconsistent results, which is one of the things claim splitting tries to avoid because on pretext the district court here didn't find it to be a problem that there was no notice provided, and then you could go to an arbitration, and the arbitration says yes, that was required. Right. Well, the claim splitting, if there wasn't arbitration, if the FAA had never been passed, which for me I would prefer, but it did, and that's what causes this problem. Obviously, if the arbitration clause didn't exist or the FAA didn't exist, we wouldn't be filing a breach of contract claim here and a discrimination claim there, but that's a consequence of the act itself. And there's nothing improper that I can see about filing a federal discrimination lawsuit in federal court and also at the same time filing a breach of contract claim for failure to provide requisite notice. It wasn't at the same time. Well, it was later. That's correct. Quite a bit later. And after quite a bit had happened, that's the whole point. Quite a bit had happened in the litigation, and so that's the notion of waiving arbitration. And then the question is, does that waiver apply to the contract claim? And you would say no because they're very different, and the defendant says yes because they're similar for the reason that Judge Costa mentioned, so that's part of the mix. Right. If you had done it on day one, you filed federal court the discrimination and arbitration arena, you filed a contract, that might be a different case. It's not the case we're dealing with here. Well, I think the timing issue would only really apply to the waiver argument. Filing it, whether we filed the breach of contract five days later or two and a half years later, doesn't really get to the claim splitting argument. It does go to the waiver argument. Absolutely does. And with that, we've cited the Subway v. Forte case, 1999 Fifth Circuit, which stated, We hold today that a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate. As you know, it's axiomatic in this circuit and all over that there is a strong presumption against waiver of arbitration. There has to be an overt act, which we never asserted a breach of contract claim in the federal discrimination lawsuit. And then Scott and White must also show prejudice. Let me ask you this. What additional discovery would need to be done to flesh out the breach of contract claim that has not already been done in the federal litigation? Well, very little, but I don't think that there would need to be any discovery on that breach of contract claim really at all. I mean, it's, you know, you read the contract. The only dispute is whether or not he was fired or quit. But isn't that the dispute of whether he was fired or resigned, wasn't that central in the federal court? Not really, Your Honor, because, I mean, they were mainly focusing on pretext. They didn't even argue that a prima facie case wasn't made. They conceded a prima facie case. I suppose if they had argued, well, he quit, so there's no, you know, adverse employment action, that would have been an issue. But it really wasn't. So all the discovery that took place in the federal lawsuit. So nobody was asked during the federal lawsuit about the circumstances of his resignation? That didn't come up? Well, that came up. Okay. So, I mean, that's my point. You've now fleshed that out in the deposition process. I mean, is there anything more that you would do in arbitration to find out, you know, how the resignation happened and what was said to him, what he says happened, what they said, you know, all that? I wouldn't probably. I'm ready to try the case right away. Okay. So to the extent that you get a benefit from the more robust federal deposition and discovery process than you have in arbitration, then that has already happened, and that's central to the whole waiver concept. Well, we could have taken depositions in arbitration if we had filed the arbitration at the beginning. All the discovery that took place in the federal case would have happened anyway. That's why I'm saying they're not prejudice. They would have had to do that discovery regardless. If we never filed the breach of contract arbitration, the exact same discovery that took place in this case would have happened. So they haven't really shown any prejudice, and you have to show prejudice to get to the waiver argument. The waiver argument. The notion that arbitration discovery can be more limited than federal court discovery is not accurate? Well, it can, but the arbitration agreement itself that we're talking about here doesn't limit discovery. I mean, you're right, Your Honor, that discovery can be more limited in arbitration, and the process is designed to be a quicker process, but the point is they didn't suffer anything that they wouldn't have already suffered. They had to do discovery in the discrimination case. They did it. It wasn't pursuant to investigating a breach of contract claim, and so they haven't shown any prejudice. Let me briefly get to the age discrimination claim. As I said, they conceded a prima facie case. He's over 40. He was terminated. He's qualified for the position and replaced by someone younger. This usually should mean a trial. For the purpose of this argument to be brief, I'm going to skip over our argument that they have not stated a non-discriminatory reason and go right into the evidence of pretext. Dr. Rob Watson was the decision maker here. We are not and we have not ever argued that he was motivated by age discrimination. In fact, when I took his deposition, it was clear to me that he highly respected Dr. Sabatelli and was not particularly happy with what he was having to do. I see I'm out of time, so unless the Court has any questions, I will close now. Thank you. Chief Judge, may it please the Court. My name is Ryan Boucher, and I will be presenting an argument on behalf of Defendants Apley, Scott, and White. Given the arguments that Mr. Melton presented, I'm going to concentrate on two specific issues for the Court today. First, applying precedent from this Court, both the litigation waiver doctrine as well as the claim splitting doctrine separately bar Dr. Sabatelli from belatedly trying to arbitrate his claim for breach of contract. Second, with regard to Dr. Sabatelli's claim under the Age, Discrimination, and Employment Act, Dr. Sabatelli failed to present evidence of pretext. Turning to my first point regarding litigation waiver and claim splitting, the Court started here, and I think that's a very necessary and logical starting point, which is to explain that contrary to Dr. Sabatelli's argument, Dr. Sabatelli was absolutely required to arbitrate his discrimination claims, and that's the argument he made. If you look at page 824 of the record, he explicitly stated to Judge Pittman, plaintiff denies discrimination claims are covered by the arbitration agreement. He stated the same to this Court on page 40 of his brief. If you look at the actual arbitration agreement at issue here, it provides any controversies, disputes, or claims arising out of or relating to this agreement, and that's the very key language for this Court, or breach thereof, shall be resolved solely by arbitration. Does it also contain a clause that says the arbitrator will decide what's arbitrable? No, Your Honor, it does not. This Court has addressed that language in several key cases, and I'll just briefly mention them. Pennzoil exploration versus Ramco Energy, and this goes back to 1998. The Court looked at the phrase related to or relating to as it's used in arbitration agreement, and this Court observed that that's a, quote, extremely broad provision. With such a broad arbitration clause, quote, it is only necessary that the dispute touch matters covered by the agreement. It doesn't seem like Mr. Melton is disputing the arbitrability of the discrimination claims anymore. I agree. The briefing made it seem like there was some argument about the state court that didn't make a lot of sense to me and so forth, but now it seems more arguing that you're entitled to claim split even if all of the claims are arbitrable. So what's your response to that? Let me skip ahead to that. So the broad response is those claims had to be arbitrated. Once Dr. Sabatelli chose to proceed in federal court, the result is both separately, the litigation waiver doctrine and the claim splitting doctrine bar him from arbitrating. So with specific regard to the litigation waiver doctrine, there's two elements. There was discussion about a court ruling. A court ruling, unlike res judicata, doesn't require final judgment. There's only two requirements for litigation waiver. The first is substantially invoking the judicial process, and the second is prejudice. The first element is easily met. This Court has held on several occasions. Well, the only problem I see with the first element is what he was saying about the same claim language in the subway decision. It is pretty strong language that it has to be the same. You only waive the same claim, not certainly these claims arise out of the same incident, but, I mean, they are different claims. One's a state law contract claim. One is a federal anti-discrimination claim. I mean, those would typically not be considered the same claim. So how do you get around that language? Well, I think if you look at page 329 of that opinion, this Court explained that the litigant must just engage in some overt act in court that evinces a desire to resolve the arbitral dispute through litigation rather than arbitrator. And I can point the Court to a few— But it says for the same claim. And I'll point the Court to the specific points in the record. If you look at page—you start with 478 of the record. Dr. Sabatelli attached his entire employment agreement to his response opposing summary judgment, a full and final summary judgment opposing dismissal. And a key component of that was for Judge Pittman to decide was there a breach of contract. He was trying to avoid a complete dismissal. If that's not central, I don't know what is. I'm sorry. How did he get breach of contract in? Sure. And I'll build up to that, Your Honor. I'm sorry. I skipped ahead. So he attached the entire contract. That's on 478. If you look at pages 394 to 395 of the record, he has an entire section in his response entitled, quote, the contract. And perhaps most importantly, Chief Judge, I think addresses your point, if you look at page 378 of the record, he specifically argued to Judge Pittman, quote, Scott and White decided to terminate Dr. Sabatelli's employment. They did so in violation of the termination procedure set forth in his contract. He made the same arguments on page 394, 395, and 396 of the record. So he was asking Judge Pittman to enter a ruling on the exact same, exactly the same issue as arbitration. But he didn't stop with Judge Pittman. If you look at pages 16, 21, and 28 of his brief to this court, he's asking this court to decide that same issue. So there's no disputing Dr. Sabatelli invoked a judicial process and is continuing to invoke the judicial process on the exact same issue he was looking to arbitrate. As to the second requirement – Because it comes in through the pretext discussion. Yes, Your Honor. And he's – and that – I agree it's the same issue. I'm just not – I'm not sure it's the same claim. I have a – and I should have looked at this before I came to argue it. We have a line of cases that talks about whether a federal court has the power to enjoin state arbitration proceedings to protect its judgment. Yes, Your Honor. And did you look at those cases in briefing this? Because those cases seem to say that the state courts are just as competent as the federal courts in deciding whether there's race judicata or not, which leads me to think that the arbitration can proceed and it's up to the state courts to decide whether the federal judgment is preclusive or not. Well, the difference, Your Honor, here is that Dr. Sabatelli filed in federal court. He chose federal court as his forum. Or it's a discrimination claim. And for this – And he's now filed an arbitration claim. What's happened to that? He said the arbitrator ruled there's no race judicata, so is that just suspended or what's happening? No, I think Judge Pittman's order put an end to that. And I will say that the – Did he enjoin it? He did not enjoin it, I don't believe, Your Honor. I didn't see anything enjoining it. And as for the timeline – I thought the arbitrator put the arbitration on hold pending this appeal. Did I miss that? I don't think it was in the record as to exactly what occurred with that. But one thing I'll note that came up with the timeline is if you look at page 517 to 548 of the record, this – Scott and White filed this request for declaratory judgment objecting to the arbitration with Judge Pittman before it actually answered an arbitration and because the timing had to do a Rule 91A res judicata issue. And so it actually brought the issue up with Judge Pittman first. But the arbitrator did not have authority to issue that ruling. Says who? This circuit. And so – What's your best case that the arbitrator didn't have authority to proceed on a double track? I think this goes to Dr. Sabatelli's second argument opposing claim splitting where he says that's for the arbitrator to decide, not for this court or for Judge Pittman. And he cites, of course, the Hoswem v. Dean Witter Reynolds and some cases outside of this circuit. But the court doesn't need to go outside this circuit in order to decide that issue. If you look at – to answer your question, Your Honor – Vine v. PLS. In Vine v. PLS, this court interpreted Hoswem just two years ago and explained it's a very narrow holding. This court in Vine v. PLS, the plaintiff, similar to Dr. Sabatelli here, was arguing that waiver was for the arbitrator to decide. This court explained that, yes, looking at the Hoswem opinion, that court made specific reference to waiver and similar defenses. And so the plaintiff's argument had, quote, surface appeal. But it was nonetheless incorrect. And this court agreed with the Third Circuit and said, look, when you consider the Hoswem opinion in its entirety and in context, quote, it becomes clear that the Hoswem court was referring only to waiver-delayer-like defenses arising from noncompliance with contractual conditions precedent to arbitration and not to claims based on active litigation in court. This court went further to explain that, quote, litigation conduct implicates court's authority, not the arbitrator's. So I think Vine v. PLS makes clear – That's for your waiver argument because you're right. Only the court where your conduct is giving rise to a possible waiver is really in a place to judge whether it amounts to waiver. But on the claim splitting, that's where – I mean, I read the other circuits are contrary to what the district court did here. Do you have any court of appeals decision that said it's for a court rather than an arbitrator to decide? I think everyone's using res judicata cases because that's a relative of claim splitting. And on res judicata, I would point to Miller Brewing Company v. Fort Worth Distributing – But that's before the Supreme Court decision that other courts are relying on, Hoswem, right? I agree, but its decision is directly in line with Vine v. PLS, which is post-Hoswem, in that, in that case, this court held that res judicata barred the plaintiff from arbitrating, and it looked at the plaintiff's litigation conduct. I guess a more direct way of asking my question, we'd be – my reading is we'd be creating a circuit split if we said a court, not an arbitrator, gets to decide a res judicata slash claim splitting type issue. Is that right or no? There are other circuit courts outside of the Fifth Circuit who have agreed on the res judicata point, including the Seventh and Eleventh Circuit, and I – The Seventh and Eleventh, they're contrary to what Judge Pittman did, right? Well – I thought he recognized that. So in the Seventh Circuit post-Hoswem, the Seventh Circuit said the trial court determines res judicata effect of its own judgment, and that was Ford Motor Credit Company v. Cornfield. And then the Eleventh Circuit post-Hoswem, there's Grigsby and Associates, I think Judge Pittman cited to that, and that's where the court – the Eleventh Circuit is in agreement with this court and said, yeah, litigation waiver is for the court. We understand – Well, that I agree with, but I'm saying res judicata. That's a different animal. I agree – and I don't think that's really a dispute in this case that the litigation waiver is for a court, but I'm saying res judicata because I – I mean, I have the Eleventh Circuit in Clay v. United Health Group, the Seventh in Zurich v. Watts Industries say arbitrator determines preclusive effect. It was, I think, State Court in Seventh Circuit, a State Court judgment. The Eleventh Circuit, it was a federal court judgment's preclusive effect. And I think the res judicata cases are so instructive because claim splitting is under the res judicata umbrella. And so don't the other courts say that's for an arbitrator to decide, res judicata? No, I just cited two cases where they don't. Okay, we'll have to look at the cases. But also, again, Miller Brewing Company, I looked it up last night. Since HOSWM, it has been cited by this court at least 18 times with approval and has never been overturned, and it's the well-established case in this circuit. And as far as I could tell, no other circuit called that point into question. So I think because Scott and White's claim splitting defense arises solely from Dr. Sabatelli's judicial conduct in Judge Pittman's court, and because Judge Pittman was in the best position to decide whether or not his order precluded that new claim that was trying to be brought, then it is a decision for the court, not the arbitrator, to decide. Why does the court do issues? I mean, I understand, like I said, on litigation waiver, you're looking at the whole, you know, what did they do in discovery, what did they do? I mean, that gets really into the weeds. But res judicata, I mean, all the time we decide the preclusive effect of a state court judgment, we weren't the judge in that case. I mean, it's just a legal question. I don't understand why for res judicata or claim splitting there's this added expertise of being the court that issued the judgment. I mean, almost always in res judicata, it's another court because the case is later filed in a different court that's deciding preclusive effect. Sure. Your Honor, all I can do is return to what this court instructed litigants on in Vine versus PLS, which is because it relates. That's a litigation, that's a waiver case, though. Well, it was speaking to the hospital opinion, which said waiver and other like defenses, estoppel. I mean, it named, I mean, if we look at the hospital opinion, it said it wasn't just waiver. It said so, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or like defense of arbitrability, time limits, notices, latches, estoppel, and other conditions precedent to an obligation to arbitrate. So this here, he's not being barred because there was some condition precedent or prerequisite to arbitration that was not met. The issue is that after the fact, after the fact, there was conduct that occurred, and so he has waived that right. And I think it goes back to the very initial starting point, which is these were two claims that were absolutely required to be arbitrated. And Scott and White raised that in its original answer. It made sure to note that his discrimination claims were subject to this arbitration provision. So he was well aware from the very beginning. Obviously, you have the right not to enforce the arbitration. You just decided you were happy in federal court. That's correct. We trusted the federal court we were in, and we exercised our right, just like Dr. Sabatelli exercised his right to waive arbitration. And then in going back to a point that was discussed earlier, even if this court were to decide that Dr. Sabatelli did not substantially invoke the judicial process, and I'm speaking to litigation waiver here, on the issue he now seeks to arbitrate, just summing it up, because that rule requires that all claims arising out of a single wrong must be presented in one action. In other words, if there are several claims that arise from a common nucleus of operative fact, you can't split up those claims and bring them in separate forums. With regard to the merits of that argument, there's no disputing that Dr. Sabatelli's claim for breach of employment contract and his discrimination claims arise from a common nucleus of operative fact. As Judge Pittman correctly observed, all the claims arise from Scott White's request for him to resign. So for all those reasons, we think Dr. Sabatelli waived his right to arbitrate for a breach of contract claim. Turning to the second issue that was addressed today, Dr. Sabatelli did not present evidence to support pretext. He provides three grounds for pretext. First and foremost, he argues that Scott and White presented inconsistent reasons, and his focus there is the very first or the very last meeting where he was asked to resign. He said no reason was provided as to why he's being asked to resign. But it's clear if you look at the record, that argument was created solely to try and avoid summary judgment at the last minute. In his affidavit that he submitted to Judge Pittman, he represented, during my termination meeting, Dr. Watson basically told me I was being terminated, did not explain why. That's on page 406 of the record. And now he's representing to this panel on page 21 of his brief, quote, plaintiff was given no reason for his termination at the time he was terminated. But the record very, very clearly disputes that and contradicts that. If you look at page 503 of the record, that's his charge to the EEOC, where he argued or he swore that at the time I was terminated, my supervisor remarked when discussing an incident where a nurse had gotten upset after I told her how to properly perform her job. So he's admitting there not only was he given the reason, he was given a specific example. Paragraph 4.2 of his complaint, which he never amended, he stated that same thing to Judge Pittman. And then page 166 of the record, in his deposition, which was before his affidavit, he admitted that during the resignation meeting, Dr. Watson, the decision maker, quote, mentioned the Jessica thing as an example of the issue. And if you look at the record, the Jessica thing was where the director of radiology, Jessica Dilan, broke down crying in tears and left work because of an incident with Dr. Sabatelli. Dr. Sabatelli admitted in deposition she broke down in tears. And then the meeting minutes are on 317. Those also mention that example. So that first pretext argument does not have any merit. Applying the cat's paw theory, he tries to establish pretext by relying upon remarks from a subordinate nurse, Jennifer Varner, and a subordinate technologist, Matthew Alvarado. This court has called into question whether or not the cat's paw theory even applies under the ADEA. But even if it does, it's not a valid theory because there's no evidence either of those subordinate employees exercise any leverage or influence over Dr. Watson. And then the final argument on pretext, of course, is the 60-day termination or 90-day termination provision that Scott and White failed to comply with. Under this court's precedent, there is no probative value unless there is evidence that similarly situated employees were treated differently. There is none here, but beyond that, as we've discussed, that provision didn't even apply because he was not terminated. He was asked to resign. So I see my time's wrapping up. What I will say with regard to both discrimination claims is it boils down to this. I don't care what workplace you're in. It's not okay to treat people in a way that makes them cry. It's not okay to treat people in a way that makes them quit. It's not okay to treat people in a way that makes them transfer jobs. There's examples of many different people having that reaction to Dr. Sabatelli. But in this workplace in particular, when dysfunction occurs, lives are put at risk, literally. And so for the sake of its patients and the sake of its other employees, Scott and White had no choice but to ask for his resignation. Thank you, Your Honors. Thank you, Your Honors. To answer your question, Your Honor, the arbitrator did order the case stay pending the outcome of this appeal. It did not? No, the case has stayed, the arbitration. The case has stayed. Okay, that's what I thought. Right. I do not believe they have cited or that there is a circuit court case that supports what the lower court said, that this is an issue for the lower court instead of the arbitrator. The Miller Brewing case that Scott and White cites, the first time I read that, I was like, well, that's not a very good case for me. But then I realized that it was a 1986 case that was decided before the U.S. Supreme Court decision in Howson, which, as we all know, says that procedural issues are to be decided by the arbitrator. And I think all the circuits that have addressed it have found that in this particular situation, it should be going to the arbitrator. The cases they cite and the lower court cites in dicta say that a federal court could potentially decide the issue, but they don't make that holding. And I think what they're talking about there is that relates to the waiver claim. If somebody makes a claim in federal court, if we had sued for breach of contract and then later on decided to file an arbitration, then sure, of course the claim should be enjoined by the federal court to protect its own judgment, but that's not what happened here. So what would happen? I mean, hypothetically, if we affirmed, you said the arbitrator stayed the arbitration. So hypothetically, if we affirmed, even though there's no injunction, everyone agrees the arbitration's done, I mean, what? Well, I would argue that it shouldn't be, but as a practical matter, I suspect the arbitrator would disagree. Because there's a declaratory judgment that the arbitration shouldn't go forward? The arbitrator just stayed it. No, I'm saying what did the district court do? They raised a counterclaim, right? Right. The district court granted their summary judgment on their declaratory action saying that we violated the claim-splitting provision in race judicata, and then also that it's been waived. The district court didn't address the get-to-the-waiver argument because it decided that the claim-splitting argument was dispositive. So essentially, as a practical matter, an injunction was granted against the arbitration going forward, and I'm not the arbitrator, but I suspect depending on what happens here, the arbitrator will either go forward if I win and dismiss it if we don't. If we were to affirm, would you ask the arbitrator to do what? Well, I'm not sure what I could ask the arbitrator in that situation because I'd be asking the arbitrator to do something that a federal court said not to do. So I guess maybe just dismiss it, I guess. And then the issue never gets decided by anybody whether or not the contract claim was the 90-day provision was met. So that's not a great answer for Chief Justice because I hadn't really thought of that, but that's probably as a practical matter what would happen. As I was saying, the age discrimination claim, what we've always argued is that it was the nurses in the techs, such as Jennifer Varner and Matt Alvarado, who are the ones who clearly got Dr. Sabatelli fired, and there's evidence that they did not like him in part and made age-related comments. The former radiology manager, Tammy Payton's declaration, which very rarely seems to get addressed, makes clear that there's at least a fact issue that the problems in the department were not being caused by Dr. Sabatelli but were instead being caused by the nurses and techs. Ms. Payton's declaration also makes clear that it was the nurses and techs, such as Jennifer Varner and Matt Alvarado, who were the ones who ultimately got Dr. Sabatelli fired or at least create a fact issue for a jury. The evidence showed that Jennifer Varner called Dr. Sabatelli an old fart in a non-jokey manner, stated that all the staff are young, with certain exceptions, looking at Dr. Sabatelli. Matt Alvarado said he was getting old and forgetful like Dr. Sabatelli, and there were other age-related comments made by others in the department. Scott and White argues that they were merely stray remarks, but the Fifth Circuit has made clear statements need only demonstrate, one, a discriminatory motive, and two, be made by a person responsible for the adverse action or somebody with influence or leverage. The district court focused on the word leverage. What we argued was the word influence, and we believe they influenced determination. Thank you. Thank you, counsel. We hear you.